*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | | |
|---|---|---|
| *DANIEL ROYER,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *Docket No. 05-151-P-H* |
| | ) | |
| *STEPHEN J. SHEA, et al.,* | ) | |
| | ) | |
| *Defendants* | ) | |

*RECOMMENDED DECISION ON MOTIONS TO DISMISS AND FOR SUMMARY
JUDGMENT*

Defendant Stephen J. Shea moves to dismiss, and, alternatively, for summary judgment on the

remaining counts asserted against him.[1]  Motion to Dismiss, etc. ("Shea Motion") (Docket No. 29).

The other defendants, Dana Lajoie, Richard deRochemont, Ernest Gove and the Town of South

Berwick,[2] move for summary judgment on all counts.  Defendants Dana Lajoie, Richard deRochemont

and Ernest Gove's Motion for Summary Judgment ("Municipal Motion") (Docket No. 35).  I

recommend that the court grant both motions in part.[3]

## I.  Applicable Legal Standards

### A.  Motion to Dismiss

Shea's motion to dismiss invokes Fed. R. Civ. P. 12(b)(6), which provides for dismissal upon

failure to state a claim on which relief may be granted.  Shea Motion at 1.  "[I]n ruling on a motion to

---

[1] The court previously granted Shea's motion for partial summary judgment as to Counts Six, Seven, Ten, Eleven and Twelve on January 24, 2006.  Docket No. 25.

[2] The title of this motion mentions only the individual defendants, not the town.  However, it appears from the text of the motion that counsel meant to include the town as a moving party.  Municipal Motion at 17-20.

[3] The plaintiff has requested a hearing on Shea's motion.  Plaintiff's Objection to Motion to Dismiss, etc. ("Shea Opposition") (Docket No. 41) at 24.  Evidentiary hearings are not contemplated by the rules governing summary judgment practice.  If the plaintiff means to request oral argument, the parties' papers provide a sufficient basis on which to decide the motion.  However intended, the request is (*continued on next page*)

dismiss [under Rule 12(b)(6)], a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). The defendant is entitled to dismissal for failure to state a claim only if "it appears to a certainty that the plaintiff would not be unable to recover under any set of facts." *State St. Bank & Trust Co. v. Denman Tire Corp.*, 240 F.3d 83, 87 (1st Cir. 2001); *see also Wall v. Dion*, 257 F. Supp.2d 316, 318 (D. Me. 2003).

### B. Summary Judgment

*1. Federal Rule of Civil Procedure 56.* Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.'" *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Santoni,* 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999)

---

denied.

(citation and internal punctuation omitted); Fed. R. Civ. P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

2. *Local Rule 56.* The evidence the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the Local Rules of this District. *See* Loc. R. 56. The moving party must first file a statement of material facts that it claims are not in dispute. *See* Loc. R. 56(b). Each fact must be set forth in a numbered paragraph and supported by a specific record citation. *See id.* The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]" Loc. R. 56(c). The nonmovant likewise must support each denial or qualification with an appropriate record citation. *See id.* The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation. *See id.* The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement. *See* Loc. R. 56(d). Again, each denial or qualification must be supported by an appropriate record citation. *See id.*

Failure to comply with Local Rule 56 can result in serious consequences. "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." Loc. R. 56(e). In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material

properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact." *Id.*; *see also, e.g., Cosme-Rosado v. Serrano-Rodriguez*, 360 F.3d 42, 45 (1st Cir. 2004) ("We have consistently upheld the enforcement of [Puerto Rico's similar local] rule, noting repeatedly that parties ignore it at their peril and that failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted." (Citations and internal punctuation omitted).

### III. Motion to Dismiss

Shea moves to dismiss the remaining counts asserted against him in the amended complaint. Shea Motion at 1 & n.1.

### A. Factual Background

The amended complaint includes the following relevant factual allegations.  The plaintiff resides as 54 Beaver Dam Road, South Berwick, Maine.  Amended Complaint (Docket No. 18) ¶ 5. Defendant Stephen J. Shea is a state trooper employed by the State of Maine.  *Id.* ¶ 6.  Defendants Richard S. deRochemont and Ernest J. Gove III are police officers employed by the defendant Town of South Berwick, Maine.  *Id.* ¶¶ 7-8.  Defendant Dana Lajoie is the Chief of Police of the South Berwick Police Department.  *Id.* ¶ 9.

On or about July 17, 2004 the plaintiff was sitting in his car near his driveway and reading his mail.  *Id.* ¶ 12.  Without witnessing any crime by the plaintiff and having no probable cause to believe that the plaintiff had committed any crime, Shea approached the plaintiff aggressively and began asking questions.  *Id.* ¶¶ 14-16.  Shea asked the plaintiff whether he had his license and registration; the plaintiff responded that it was in his house and he offered to get it.  *Id.* ¶ 17.

Shea ordered the plaintiff to get out of his car. *Id*. ¶ 18.  The plaintiff asked why he was being so ordered.  *Id*. ¶ 19.  Shea told the plaintiff that he was being arrested for assault.  *Id*. ¶ 20.  The plaintiff asked sarcastically, "Assaulting what, my mail?"  *Id*. ¶ 21.  Shea reached into the car in a violent manner and tried to open the car door.  *Id*. ¶ 22.  As Shea continued to try to gain entry to the car and was screaming, the plaintiff was fearful for his safety.  *Id*. ¶¶ 23-24.  The plaintiff said repeatedly that he was just checking his mail, that he lived there, "Leave us alone," and "What is the problem?"  *Id*. ¶ 25.  Shea backed away from the car and the plaintiff pulled into his driveway.  *Id*. ¶ 29.  The plaintiff's "partner" jumped out of the car and ran into the house.  *Id*. ¶ 30.  She grabbed the telephone, camera and telephone book and ran back outside.  *Id*.

Shea ran to the car, opened the door, grabbed at the plaintiff, hit the plaintiff and ripped the plaintiff's shirt.  *Id*. ¶ 32.  DeRochemont reached into the car and grabbed the plaintiff.  *Id*. ¶ 33.  As soon as the plaintiff knew there was another officer on the scene, he released his grip on the steering wheel and cooperated.  *Id*. ¶ 34.  Shea and deRochemont took the plaintiff from his car, threw him to the ground, twisted his arms, hit him, placed him in handcuffs and grabbed at him, all in a violent manner.  *Id*. ¶ 35.  Shea and deRochemont placed the plaintiff in Gove's cruiser.  *Id*. ¶ 36.  Gove wrote a false police report in order to protect his fellow officers.  *Id*. ¶ 40.  Gove and deRochemont failed to protect the plaintiff, to come to the aid of the plaintiff and to resist the unlawful actions of others.  *Id*. ¶¶ 41-42.

Shea brought multiple criminal charges against the plaintiff without legal or factual foundation.  *Id*. ¶¶ 43, 45.  These charges were dismissed.  *Id*. ¶ 46.  Additional charges of reckless conduct and failure to stop for an officer were also brought against the plaintiff.  *Id*. ¶ 47.  These charges were dismissed days before trial on the basis of insufficient evidence.  *Id*. ¶ 48.  The plaintiff's "partner"

was also charged with a complaint that was dismissed just before trial. *Id*. ¶ 49. At all relevant times, each defendant was acting under color of state law. *Id*. ¶ 11.

## B. Discussion

*1. State constitutional claims*.  Shea first contends that the claims based on alleged violations of the Maine Constitution in Counts One through Five and Twelve fail to state a claim on which relief may be granted because they invoke only 42 U.S.C. § 1983 as the procedural vehicle for the claims asserted, and section 1983 does not provide a mechanism for the redress of state constitutional claims. *Id*. at 2.  The plaintiff responds that he "agrees with Defendant's proposition of law" but goes on to assert that he "does not bring any of his § 1983 actions based upon violation of Maine's Constitution." Shea Opposition at 1.  This contention is curious since Counts One through Five of the amended complaint each invoke "the Maine Constitution."  Amended Complaint  ¶¶ 56, 60, 65, 69, 71, 73. Count Twelve, however, cannot be so read. *Id*. ¶¶ 99-101.  Only alleged federal constitutional or statutory violations may be addressed through section 1983. *Estades-Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1, 4 (1st Cir. 2005).  Shea is entitled to dismissal of any claims asserted under the Maine Constitution in Counts One through Five.

*2. Counts Three, Four and Five*.  Shea next asserts that Counts Three, Four and Five are all "predicated on Shea's alleged use of excessive force" and that all such claims must be analyzed under the Fourth Amendment to the United States Constitution.[4]  Shea Motion at 2-3.  He contends that these counts "simply reassert Fourth Amendment causes of action under the aegis of other constitutional provisions" and therefore must be dismissed. *Id*. at 3.  The plaintiff does not respond to this argument.  To the extent that these counts merely restate an excessive force claim, Shea  is entitled to their

---

[4] Shea includes in his reference to specific counts of the amended complaint Counts Eleven and Twelve as well, but it is apparent that these counts state purely state-law claims.

dismissal. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Each of these counts invokes other provisions of the Constitution, however, which necessitates individual discussion of each count.

*3. Count Three.* Count Three alleges that Shea "violated the Plaintiff's rights of free speech and assembly guaranteed by the First and Fourteenth Amendments to the United States Constitution." Amended Complaint ¶ 63. Shea contends that he is entitled to dismissal of this count because, inasmuch as nowhere in the amended complaint is it alleged that the plaintiff was engaged in protected speech or that Shea's conduct had a chilling effect on the plaintiff's exercise of his First Amendment rights, it fails to state a cognizable claim. Shea Motion at 3-4. In response, the plaintiff asserts that "[t]here are three aspects of speech alleged by the Plaintiff[] on which Shea's conduct has a chilling effect:" the plaintiff's remarks to Shea "during the initial approach by Shea and interaction at the mailbox," "whether Shea's conduct is retaliatory and malice towards Plaintiff's use of New Hampshire plates," and the plaintiff's right to remain silent. Shea Opposition at 2. The plaintiff does not refer at all to the allegations in the amended complaint, which are the only appropriate focus in evaluating a motion to dismiss.

The amended complaint alleges that the "[p]laintiff was engaged in lawfully protected speech and assembly" and that "Shea's actions in seizing, arresting, using force and unreasonable force, and prosecuting the Plaintiff violated the Plaintiff's rights of free speech and assembly." Amended Complaint ¶¶ 62-63. I have already noted that claims that a police officer used unreasonable force may only be raised under the Fourth Amendment; I will not consider those allegations further with respect to Count Three. The amended complaint, reasonably construed, contains no mention of the plaintiff's use of New Hampshire license plates on his car or any conduct by Shea involving those plates and therefore the plaintiff may not oppose the motion to dismiss on the basis of any such conduct. *See Pagán v. Calderón*, __ F.3d __, 2006 WL 1320744 (1st Cir. May 16, 2006) at *9

(complaint is required to set forth minimal facts as to who did what to whom, when, where and why). The amended complaint clearly does allege that the plaintiff engaged in protected speech during the incident and it recites several instances of speech or silence on the part of the plaintiff.  *Id.* ¶¶ 17, 19, 21, 25, 27.  Nothing in the allegations of the complaint may reasonably be construed to implicate the plaintiff's right of assembly.  *See Wine & Spirits Retailers, Inc. v. Rhode Island*, 418 F.3d 36, 50 (1st Cir. 2005) (First Amendment embraces freedom to engage in association for the advancement of beliefs and ideas).  Shea's assertion that the amended complaint fails to allege any chilling effect on the plaintiff's exercise of his right to freedom of speech is correct.  This omission is fatal.  *Sullivan v. Carrick*, 888 F.2d 1, 4 (1st Cir. 1989) (plaintiff must allege that his speech was in fact chilled or intimidated by defendant's conduct); *see also Singer v. Fulton County Sheriff*, 63 F.3d 110, 120 (2d Cir. 1995) (failure to allege actual chilling of speech; plaintiff failed to plead a viable First Amendment claim).  Shea is entitled to dismissal of Count Three.

*4.  Count Four*.  Count Four alleges that "[t]he seizure, arrest, and excessive force by Shea . . . were without a legitimate purpose, were excessive, punitive in nature and/or amount[] to punishment in violation of Plaintiff's rights to due process of law and to be free from summary punishment as guaranteed by the Fifth and Fourteenth Amendments . . . . "  Amended Complaint ¶ 67.  As already noted, any claims of excessive force may be brought only pursuant to the Fourth Amendment.  Shea asserts that the Fifth Amendment only deals with the right against self-incrimination, which is not mentioned in the amended complaint.  Shea Motion at 4.  The plaintiff responds that this count "is based on the Fifth Amendment right to be free from summary punishment in violation of the right to due process."  Shea Opposition at 3.  He "agree[s] that his Count Four Summary Punishment is not based upon the Fifth Amendment provision[] protecting persons from being compelled in any criminal case[] to be a witness against himself."  *Id*.  He asserts, without citation to authority, that "[p]olice officers

8

may not dole out punishment on the street, in a summary process, without due process of law." *Id.* He appears to have abandoned any claim in this count arising from the Fourteenth Amendment. This explanation of the plaintiff's claim in Count Four makes it clear that the count merely alleges an excessive use of force in a Constitutional guise based on the Fifth Amendment. This is not permissible under *Graham*. Shea is entitled to dismissal of Count Four.

*5. Count 5.* Shea seeks dismissal of this count on the basis that it asserts an excessive force claim under "the more generalized notion of 'substantive due process,'" which is prohibited by *Graham*. Shea Motion at 5. The plaintiff responds that this count is "based on a denial of liberty and substantive due process . . . based on his unreasonable seizure, use of force, and denials of liberty and substantive due process." Shea Opposition at 3. He contends that his claim alleges use of force "which amount[s] to the denial of liberty or shock[s] the conscious [sic]," thus implicating the Fourteenth Amendment. *Id*. at 4. This count of the amended complaint alleges that Shea's

> seizure, use of force, and denials of liberty and substantive due process were excessive, shocking, unreasonable, unprivileged, without legal justification, without probable cause, without Plaintiff's consent, and were are [sic] a reckless and callous disregard of Plaintiff's known constitutional rights, all in violation of his rights, privileges, and immunities to be free from an unreasonable search and seizure[] and rights to liberty and substantive due [process] as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution . . . .

Amended Complaint ¶ 71. Again, allegations of unreasonable search and seizure and unlawful use of force are to be analyzed under the Fourth Amendment. Shea contends that substantive due process claims arising out of pre-trial arrest and detention must also be brought under the Fourth Amendment since *Graham*. Reply to Plaintiff['s] Objection to Motion to Dismiss, etc. ("Shea Reply") (Docket No. 48) at 2. That view is correct. *Graham*, 490 U.S. at 395; *Poe v. Leonard*, 282 F.3d 123, 136 (2d Cir. 2002). With respect to the plaintiff's claim of deprivation of liberty, however, due process protection under the Fourteenth Amendment is available where pretrial detention amounts to

punishment of the detainee.  *Graham*, 490 U.S. at 395 n.10; *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  This is the only portion of Count Five that survives Shea's motion to dismiss.

6.  *Count Six*.  Count Six alleges that Shea's "acts constitute a wrongful invasion or intrusion into the Plaintiff's private affairs or recognized zone of privacy, in a manner that would outrage a person of ordinary sensibilities and cause such person shame, humiliation and mental suffering . . . ." Amended Complaint ¶ 75.  Shea argues that he is entitled to dismissal of this count because it does not allege an interference with personal rights limited to matters relating to marriage, procreation, contraception, family relationships and child rearing and education, citing *Paul v. Davis*, 424 U.S. 693, 713 (1976).  Shea Motion at 5.  The plaintiff responds that Shea "does not address privacy under State law," Shea Opposition at 5, which is alleged in this count along with 42 U.S.C. §§ 1983 and 1988, Amended Complaint ¶ 76.  To the extent that Count Six alleges the state common law tort of invasion of privacy, that claim has already been dismissed as against Shea.  Docket No. 25.

The plaintiff next contends that the federal constitutional right to privacy is not limited as Shea asserts but rather extends "to all personal rights that can be deemed fundamental or implicit in the concept of ordered liberty."  Shea Opposition at 6 (citation and internal punctuation omitted). He claims that such a right — the right to be left alone — is asserted in the amended complaint, citing *Olmstead v. United States*, 277 U.S. 438 (1928), a case that has since been largely overruled.  *See, e.g., Katz v. United States*, 389 U.S. 347, 352-53 (1967).  *Id*.  *Paul v. Davis* makes clear that the plaintiff's attempt to expand the scope of the constitutional right of privacy to the circumstances of this case is much too great a leap.  In that case, the plaintiff claimed that disclosure of the fact of his arrest violated his right to privacy.  424 U.S. at 713.  The Court rejected this argument, noting that the claim was not based "upon any challenge to the State's ability to restrict his freedom of action in a sphere contended to be 'private,' . . . ."  *Id*.  The plaintiff does not cite any authority for the proposition that

the right to privacy extends to an individual sitting in a motor vehicle on the shoulder of a public road late at night with the headlights on.  Such activity is neither the exercise of a fundamental personal right nor implicit in the concept of ordered liberty.  Shea is entitled to dismissal of Count Six.

*7.  Count Eleven.*  Count Eleven alleges:

> By arresting the Plaintiff and initiating criminal charges against him with malice and without probable cause to do so, and with the Plaintiff receiving favorable determinations of the criminal complaints against him, Defendant Shea has engaged in the malicious prosecution of the Plaintiff in violation of the First, . . . Fourth . . . Fifth . . . Sixth and Fourteenth Amendments to the United States Constitution . . . .

Amended Complaint ¶ 97.  Shea contends that "First Circuit precedent forecloses this claim," citing *Nieves v. McSweeney*, 241 F.3d 46, 53-54 (1st Cir. 2001).  Shea Motion at 5.  The plaintiff responds that "[a] claim for malicious prosecution is actionable under § 1983[] where the conduct was so egregious that it violated Constitutional rights," citing *Torres v. Superintendent of Police of Puerto Rico*, 893 F.2d 404 (1st Cir. 1990).  Shea Opposition at 7.

In order to bring a claim of malicious prosecution under section 1983, a plaintiff must show the deprivation of a federally-protected right.  *Nieves*, 241 F.3d at 53.  It is the plaintiff's burden to specify the constitutional right infringed.  *Id*.  The First Circuit rejected the plaintiff's claim in *Nieves* because the state provided an adequate remedy for malicious prosecution and because there is no substantive due process right under the Fourteenth Amendment to be free from malicious prosecution. *Id*. at 53-54.  From all that appears in the complaint, the same is true in the instant case. The plaintiff relies on the Fourth Amendment, Shea Opposition at 7,[5] which the First Circuit said in *Nieves*

---

[5] The plaintiff also asserts, in conclusory fashion, that "Defendants [sic] have not raised in their Motion for Summary Judgment with regard to Plaintiff's claim for malicious prosecution under the Fifth Amendment."  Shea Opposition at 7.  To the extent that this assertion is meant to apply as well to Shea's motion to dismiss, the plaintiff has not specified the constitutional right infringed; without some indication of the manner in which one of the several rights encompassed within the Fifth Amendment was allegedly infringed, the court cannot evaluate the sufficiency of the amended complaint on this issue.  The plaintiff fails to address at all the First and Sixth Amendments, which are also mentioned in Count Eleven.

"provides potentially more fertile soil," 241 F.3d at 54. "For a public official to transgress the Fourth Amendment through the initiation and pursuit of criminal charges, the prosecution of those charges must at a bare minimum have occasioned a deprivation of liberty consistent with the concept of a seizure." *Id*. "The tort of malicious prosecution permits damages for a deprivation of liberty — a seizure — *pursuant to legal process*." *Id*. (emphasis in original).

> Generally, the offending legal process comes either in the form of an arrest warrant (in which case the arrest would constitute the seizure) or a subsequent charging document (in which case the sum of post-arraignment deprivations would comprise the seizure).

*Id*. The amended complaint in this case alleges neither of these forms of legal process. Nothing in *Torres*, 893 F.2d at 409-11, a case that preceded *Nieves* by eleven years, is inconsistent with this conclusion. Shea is entitled to dismissal of Count Eleven.

8. *Count Twelve*. Count Twelve alleges that Shea, deRochemont and Gove "separately and in conspiracy," "with malice and without legal justification, used the lawful authority vested in them as police officers to accomplish an unlawful purpose to wit: the initiation and continuation of criminal proceedings against the Plaintiff" with "any or all of the following purposes:"

> (1) to cover up their use of excessive force and the unlawful arrest and imprisonment; (2) to protect themselves from civil and criminal liability; (3) to frustrate the Plaintiff from pursuing legal remedies available to him as guaranteed by the United States . . . Constitution[], Federal . . . Civil Rights Acts . . . ; (4) to retaliate against the Plaintiff for conduct they considered offensive.

Amended Complaint ¶ 100. Shea contends that "[p]roof of abuse of process alone cannot support a finding of liability under Section 1983 because it is based on the subjective motivation of the arresting officer." Shea Motion at 6. The First Circuit stated in *Santiago v. Fenton*, 891 F.2d 373, 388 (1st Cir. 1989), that abuse of process "is not cognizable as a civil rights violation under § 1983." The plaintiff opposes Shea's motion by discussing intent as an element of the defense of qualified

immunity.  Shea Opposition at 8.  He does not address the clear holding of *Santiago*, which controls

here.  Shea is entitled to dismissal of Count Twelve.

*9. Count Thirteen*.  Count Thirteen alleges that Shea, deRochemont, Gove and Lajoie

> engaged in a conspiratorial agreement, the essential nature of which was
> known to each other, to deprive the Plaintiff of his civil rights, to cover-up a
> violation of those rights, or having knowledge of the violations that were
> about to be committed, and having the power to prevent or aid in preventing
> the commission of them, neglected or refused to do so, and by their acts did
> tolerate or acquiesce to a code of silence concerning these violations, which
> as a direct and proximate result of their acts, or failure to act, separately, in
> concert and in agreement with each other, did violate Plaintiff's rights[] to
> equal protection of the laws and equal privileges and immunities under the
> law, and other civil right[s] violations as alleged herein, including but not
> limited to unreasonable force, illegal search, false arrest and imprisonment,
> malicious prosecution, abuse of process, and invasion of privacy.

Amended Complaint ¶ 103.  Shea asserts that only subsection 3 of 42 U.S.C. § 1985 is implicated by

the amended complaint and that such a claim requires a plaintiff to allege a conspiracy intended to

deprive an individual of protected rights based on a racial or other invidiously discriminatory animus,

an allegation that is missing from the amended complaint.  Shea Motion at 7.

The plaintiff begins his response by asserting that Shea "has only moved for dismissal of that

portion of Plaintiff's claim for conspiracy that relies upon 42 U.S.C. § 1985" and that "[a]ccordingly,

all other aspects of the Plaintiff's claim for conspiracy survive."  Shea Opposition at 9.  He does not

identify those "other aspects" of Count Thirteen, which alleges an entitlement to relief under 42 U.S.C.

§§ 1983, 1985, 1986 and 1988.  Amended Complaint ¶ 104.  Of those statutes, only sections 1985 and

1986 mention conspiracy.  I therefore will not consider sections 1983 and 1988 further in this respect.

The plaintiff asserts that he "falls into the class of residents of Maine treated differently from

other residents of Maine, because of [his] New Hampshire plates."  Shea Opposition at 9.  He adds

that he "is also treated differently form other citizens who are victims of assault, simply because the

assailant is another law enforcement officer.  This is preferential treatment to the class of law

enforcement officers . . . ."  *Id*.  He cites "Burns, footnote 4" in support of his argument, *id*., presumably *Burns v. State Police Ass'n of Mass.*, 230 F.3d 8, 12 (1st Cir. 2000), cited by Shea, Shea Motion at 7, as no other case with that name in the title is cited in the opposition.  However, no such class is alleged in the amended complaint.  Section 1985 also requires "racial motivation or other invidiously discriminatory animus against a class."  *Burns*, 230 F.3d at 12 n.4.  No such animus is stated in the amended complaint.  This court requires such allegations in the complaint.  *McDermott v. Town of Windham*, 204 F.Supp.2d 54, 59 n.9 (D. Me. 2002).  Shea is entitled to dismissal of Count Thirteen.

## IV.  Motions for Summary Judgment

### A.  Factual Background

The parties' statements of material facts, submitted pursuant to this court's Local Rule 56, include the following undisputed relevant facts.

At all relevant times, the plaintiff resided at 54 Beaver Dam Road, South Berwick, Maine. Statement of Material Facts in Support of Motion for Summary Judgment, etc. ("Shea SMF") (Docket No. 30) ¶ 1; Opposing Statement of Material Facts in Support of Plaintiff's Objection, etc. ("Plaintiff's Shea Responsive SMF") (Docket No. 42) ¶ 1.  During the same period, defendant Shea was a Maine state trooper assigned to Troop G Headquarters in Portland, Maine and to the patrol area of the southern end of the Maine Turnpike beginning at the New Hampshire border.  *Id*. ¶¶ 2-3.  He is a 19-year veteran of the Maine State Police.  *Id. ¶* 3.  Defendant deRochemont was a police officer employed by the South Berwick Police Department.  *Id*. ¶ 4.  Defendant Gove was also a police officer employed by the South Berwick Police Department.  *Id*. ¶ 5.  Defendant Lajoie is the chief of police for the Town of South Berwick and has held that position since June 1986.  Defendants Richard S. deRochemont, Ernest J. Gove, III, Dana Lajoie and Town of South Berwick's Statement of Material

Facts ("Municipal SMF") (Docket No. 36) ¶ 1; Opposing Statement of Material Facts in Support of Plaintiff's Objection to Motion for Summary Judgment, etc. ("Plaintiff's Municipal Responsive SMF") (Docket No. 45) ¶ 1.  He has been a law enforcement officer for 21 years.  *Id.* ¶ 2.

While driving a marked state police cruiser on Saturday, July 17, 2004 at approximately 11:05 p.m., and off duty, but on call, Shea stopped at the intersection of High Knoll Drive and Beaver Dam Road in South Berwick.  Shea SMF ¶ 6; Plaintiff's Shea Responsive SMF ¶ 6.  He saw a red 1997 Buick sedan with New Hampshire registration 1105268 parked to his left on the side of Beaver Dam Road with its headlights on.  *Id.* ¶ 7.  While still at the stop sign, Shea momentarily flashed his cruiser spotlight toward the Buick, intending this as a signal for the driver to dim his lights.  *Id.* ¶ 10.  Shea's training, education and experience had taught him that a motorist who fails to dim his headlights might be operating under the influence of drugs or alcohol.  *Id.* ¶ 12.[6]  The fact that it was late on a Saturday night was significant to Shea because there is a higher percentage of people who operate under the influence on the road between the hours of 10:00 p.m. and 2:00 a.m. on Saturdays than there is on other days of the week.  *Id.* ¶ 14.[7]  Shea intended to issue a verbal warning, a written warning or a summons to the operator of the Buick.  *Id.* ¶ 15.[8]

Shea turned his cruiser left onto Beaver Dam Road, drove toward the Buick and stopped his cruiser at a point slightly beyond the driver's side door so he could get out of his cruiser "safely" without being "door to door" with the Buick.  *Id.* ¶ 16.  Shea was in full uniform at the time.  *Id.* ¶ 17.  Shea asked the plaintiff, who apparently was seated in the driver's seat of the Buick, for his license,

---

[6] The plaintiff purports to deny this paragraph of Shea's statement of material facts, Plaintiff's Shea Responsive SMF ¶ 12, but the citations given by the plaintiff do not support a denial of the paragraph as it is stated.  Accordingly, the paragraph is deemed admitted to the extent supported by the citations given by Shea.

[7] The plaintiff purports to deny this paragraph of Shea's statement of material facts, Plaintiff's Shea Responsive SMF ¶ 14, but the denial is not responsive to the statement made in that paragraph of Shea's statement of material facts, which accordingly is deemed admitted to the extent supported by the citations given to the summary judgment record.

[8] Again, the plaintiff purports to deny this paragraph of Shea's statement of material facts, Plaintiff's Shea Responsive SMF ¶ 15, but the denial is not responsive and the paragraph is therefore deemed admitted to the extent supported by the citation given.

registration and insurance card. *Id.* ¶ 22.[9]  The plaintiff said that he was just trying to get his mail. *Id.* ¶ 23.  Shea heard the plaintiff and his passenger say something about going to get coffee. *Id.* ¶ 25.  When Shea asked the plaintiff to step out of the Buick, the plaintiff began to roll up his car window. *Id.* ¶¶ 29-30.[10]  As a result,[11] Shea's flashlight was trapped in the car window with the illuminated end pointing at Shea. *Id.* ¶ 31.  Shea attempted to pry his flashlight out of the window using an expandable baton but stopped because he was concerned that he might break the window. *Id.* ¶ 33.  Shea told the plaintiff to lower the window. *Id.* ¶ 34.[12]  The plaintiff responded by saying something about being in fear for his life. *Id.* ¶ 35.  At some point during or after this exchange, Shea called his barracks and asked for assistance from the South Berwick Police Department. *Id.* ¶ 32.

Shea attempted to open the driver's side door only to find it locked. *Id.* ¶ 41.[13]  Shea then opened the rear driver side door and reached inside the car. *Id.* ¶ 42.  The plaintiff then stepped on the accelerator and drove his car into a driveway on the opposite side of the street. *Id.* ¶ 43.  Shea then ran over to the car and attempted to remove the plaintiff from it. *Id.* ¶ 45.[14]  He grabbed the plaintiff by the shirt in an effort to remove him from the car. *Id.* ¶ 46.[15]  The shirt ripped as the

---

[9] The plaintiff purports to deny this paragraph of Shea's statement of material facts, but the citations given in support of the denial do not contradict this portion of paragraph 22 of Shea's statement of material facts, Plaintiff's Shea Responsive SMF ¶ 22, which accordingly is deemed admitted to the extent supported by the citation given by Shea.

[10] The plaintiff purports to deny paragraph 29 of Shea's statement of material facts, but the citations given in support of that denial do not contradict the facts set out in this sentence of the recommended decision, Plaintiff's Shea Responsive SMF ¶¶ 29-30, which are accordingly deemed admitted to the extent supported by the citations given by Shea.

[11] The plaintiff asserts that he "will admit" this paragraph "dropping the causative phrase, '…as a result …'" Plaintiff's Responsive SMF ¶ 31.  No citation is given to support this qualification and it therefore will not be considered.

[12] The plaintiff purports to deny this paragraph of Shea's statement of material facts, but the denial does not address this portion of the paragraph, Plaintiff's Shea Responsive SMF ¶ 34, which accordingly is deemed admitted because it is supported by the citation given by Shea to the summary judgment record.

[13] The plaintiff purports to deny paragraph 41 of Shea's statement of material facts, but the denial does not address this portion of that paragraph, Plaintiff's Shea Responsive SMF ¶ 41, which therefore is deemed admitted to the extent supported by the citation to the summary judgment record given by Shea.

[14] The plaintiff purports to deny this paragraph of Shea's statement of material facts, but the denial does not address the portions of that paragraph stated in this recommended decision, Plaintiff's Shea Responsive SMF ¶ 45, which therefore is deemed admitted to the extent supported by the citations to the summary judgment record given by Shea.

[15] Counsel for the plaintiff is reminded that a response of "Qualified" to a paragraph of an opposing party's statement of material facts followed by citations to the summary judgment record without any attempt to state the nature of the qualification is insufficient under this (*continued on next page*)

plaintiff resisted.  *Id*.  Shea attempted unsuccessfully to pry the plaintiff's hands away from the steering wheel with his collapsible baton. *Id*. ¶ 47.  The plaintiff's female passenger got out of the car, went into the house and returned with a camera with which she took pictures of Shea.  *Id*. ¶¶ 49-50.

Defendants deRochemont and Gove were dispatched to the scene of Shea's encounter with the plaintiff at 11:07 p.m. and both arrived at 11:10 p.m.  *Id*. ¶ 51.  They had been dispatched to assist a trooper with a subject who was either intoxicated or believed to be intoxicated.  *Id*. ¶ 52.  As he drove to the scene, deRochemont assumed that the state trooper was trying to arrest a driver suspected of operating under the influence and needed assistance because the subject was resisting the trooper's efforts to take him into custody.  Municipal SMF ¶ 46; Plaintiff's Municipal Responsive SMF ¶ 46.[16] He arrived on the scene just prior to Gove.  *Id*. ¶ 53.  When deRochemont and Gove arrived, Shea was holding onto one of the plaintiff's legs.  Shea SMF ¶ 53; Plaintiff's Shea Responsive SMF ¶ 53.  Gove believed that the plaintiff's behavior was consistent with someone who was under the influence of drugs or alcohol.  *Id*. ¶ 56.[17] Defendant deRochemont reached into the car and grabbed a hand that the plaintiff was using to hold onto the steering wheel.  *Id*. ¶ 57.  Gove heard deRochemont telling the plaintiff to let go of the steering wheel.  Municipal SMF ¶ 58; Plaintiff's Responsive SMF ¶ 58.[18] The plaintiff let go of the steering wheel, after which Shea and deRochemont carried him a few feet and placed him face down on the lawn.  Shea SMF ¶ 58; Plaintiff's Shea Responsive SMF ¶ 58. DeRochemont held one of the plaintiff's arms behind his back, Shea the other, as deRochemont

---

court's Local Rule 56.

[16] The plaintiff purports to deny this paragraph of the municipal defendants' statement of material facts, but the denial is not responsive. Plaintiff's Municipal Responsive SMF ¶ 46.  The paragraph is accordingly deemed admitted to the extent supported by the citation given to the administrative record.

[17] The plaintiff purports to deny this paragraph of Shea's statement of material facts based on his denial that he was in fact under the influence of drugs or alcohol and because "Defendant Gove is not and has not been disclosed as an expert witness."  Plaintiff's Shea Responsive SMF ¶ 56.  The plaintiff's denial does not and cannot contradict Gove's statement of his own belief.  His opinion clearly is not offered as expert testimony; it is a statement of his own belief under the circumstances at the time and is admissible as such.

[18] The plaintiff purports to deny this paragraph of the municipal defendants' statement of material facts, but the denial does not address this portion of the paragraph.  Plaintiff's Municipal Responsive SMF ¶ 58.  It is accordingly deemed admitted to the extent supported (*continued on next page*)

handcuffed him. *Id*. ¶ 60. Shea kneeled on the plaintiff's upper shoulder blade area. Municipal SMF ¶ 98; Plaintiff's Municipal Responsive SMF ¶ 98. Gove heard the plaintiff shouting to his female passenger, telling her to contact his lawyer. *Id*. ¶ 82. After the plaintiff was handcuffed, he was told he was under arrest. Shea SMF ¶ 61; Plaintiff's Shea Responsive SMF ¶ 61.[19]

The plaintiff was then placed in Gove's patrol vehicle. *Id*. ¶ 62. The plaintiff had no further physical contact with deRochemont. Municipal SMF ¶ 104; Plaintiff's Municipal Responsive SMF ¶ 104. Gove did not have any physical contact with the plaintiff. *Id*. ¶ 106. The plaintiff was taken to the South Berwick Police Department and processed by Shea for operating under the influence, assault with a motor vehicle and resisting arrest. Shea SMF ¶ 63; Plaintiff's Shea Responsive SMF ¶ 63. According to dispatch data, deRochemont cleared the scene at the plaintiff's residence at 11:15 p.m., having been at the scene a total of five minutes from the beginning to the end of his involvement in the plaintiff's arrest. Municipal SMF ¶ 141; Plaintiff's Municipal Responsive SMF ¶ 141. The result of an Intoxilyzer test on the plaintiff that night was 0.00 blood alcohol content. Additional Facts ("Plaintiff's SMF") (included in Plaintiff's Municipal Responsive SMF, beginning at 25) ¶ 364; Reply to Plaintiff's Statement of Additional Facts, etc. ("Municipal Responsive SMF") (Docket No. 50) ¶ 364; Reply to Plaintiff's Statement of Additional Facts, etc. ("Shea Responsive SMF") (Docket No. 47) ¶ 294.[20]

---

by the citation given.

[19] The plaintiff purports to deny this paragraph of Shea's statement of material facts but gives no citation at all in support of the denial. Plaintiff's Shea Responsive SMF ¶ 61. The paragraph accordingly is deemed admitted because it is supported by the citation given to the summary judgment record by Shea.

[20] The plaintiff has filed identical, duplicative statements of additional material facts in his responses to the statements of material facts filed by Shea and the municipal defendants. *Compare* Plaintiff's SMF *with* Additional Facts (included in Plaintiff's Shea Responsive SMF, beginning at 17). Because the plaintiff's otherwise identical additional statements are numbered consecutively with the different statements of material facts to which the plaintiff is responding, the defendants' responses to identical paragraphs of the plaintiff's additional statements will bear different paragraph numbers. The second paragraph number following the indicator "*id*." in the following text will be that appearing in Shea's response.

The next day, July 18, Shea called his supervisor and reported that he was injured during the encounter with the plaintiff. Shea SMF ¶ 67; Plaintiff's Shea Responsive SMF ¶ 67. On July 19, he filled out a Workers' Compensation form WDC-2 (07/99) identifying his injuries. *Id*. ¶ 69. Shea subsequently issued three "Uniform Summons And Complaint" forms to the plaintiff for charges arising out of the July 17 encounter. *Id*. ¶ 72. He submitted the summonses to the York County District Attorney's Office, where Assistant District Attorney Linda Donavon screened them and, in turn, issued a criminal complaint against the plaintiff. *Id*. ¶ 73. On September 23, 2004 the plaintiff was charged in Maine District Court with reckless conduct and failure to stop for an officer on July 17, 2004. *Id.* ¶ 75. Deputy District Attorney Katherine Slattery testified that it is "very common" that no charges or completely different charges may result in such circumstances. *Id*. ¶¶ 76-77. The attorney representing the plaintiff in this case also represented the plaintiff in connection with the criminal charges. *Id*. ¶¶ 74, 79-84. The York County District Attorney's Office failed to provide the plaintiff's attorney with the discovery material to which he was entitled in connection with the criminal charges due to an "administrative error." *Id*. ¶¶ 85-86. On February 24, 2005 Slattery dismissed the charges against the plaintiff. *Id*. ¶ 87. She did not speak with Shea before doing so. *Id*. ¶ 95.

Defendant deRochemont graduated from both the Maine Criminal Justice Academy's one hundred hour reserve officer's course and its fulltime patrol officer's course. Municipal SMF ¶¶ 7-8; Plaintiff's Municipal Responsive SMF ¶¶ 7-8. Before July 17, 2004 he had received training in arrest procedures, including the use of physical force in connection with an arrest, at both the Maine Criminal Justice Academy and the South Berwick Police Department. *Id*. ¶ 9. Gove graduated from the same two Academy courses and holds an associate's degree from Wentworth Institute in Boston, Massachusetts. *Id*. ¶¶ 11-12. He was promoted to his current rank of sergeant in 2002. *Id*. ¶ 13. He has received training in arrest procedures, including the use of lawful force in connection with arrests,

both at the Academy and as an employee of the Town of South Berwick.  *Id.* ¶ 14.  On July 17, 2004 the South Berwick Police Department had in effect a standard operating procedure governing the use of force in connection with arrests.  *Id.* ¶ 15.  Written polices regarding use of force are mandated by state law.  *Id.* ¶ 17.  As part of his employment as a South Berwick police officer, deRochemont was required to familiarize himself with the law and department policy governing the use of force.  *Id.* ¶ 18.  The South Berwick Police Department has a training program that includes field training officers, supervised by a lieutenant, to ensure that all officers receive essentially twice the amount of annual training hours required by the State of Maine.  *Id.* ¶ 20.

During Lajoie's 19-year tenure as chief of police, the Town of South Berwick has not had a significant history of citizen complaints regarding unlawful arrests and/or excessive use of force in connection with arrests.  *Id.* ¶ 21.[21]  In July 2004 the use of force by South Berwick police officers was covered in the South Berwick Police Department's Policy entitled "Use of Force."  *Id.* ¶ 28. Prior to July 17, 2004 neither deRochemont nor Gove had ever been the subject of a complaint alleging the use of excessive force.  *Id.* ¶¶ 29-30.  Lajoie has not received any information concerning deRochemont and Gove that would lead him to conclude that they pose any risk to citizens with respect to the use of excessive force in the performance of their duties.  *Id.* ¶ 31.  Nothing that occurred prior to July 17, 2004 would have alerted Lajoie's administration to any problems with training or supervision of South Berwick police officers with regard to arrest procedures, include the lawful use of non-deadly force in connection with arrests.  *Id.* ¶ 33.  If appropriate, South Berwick police officers will be disciplined as a result of a finding that a citizen complaint is substantiated.  *Id.*

---

[21] The plaintiff purports to deny this paragraph of the municipal defendants' statement of material facts, Plaintiff's Municipal Responsive SMF ¶ 21, but the cited materials do not contradict the portion of this paragraph stated above.

¶ 35.  South Berwick Police Department supervisors can initiate complaints themselves when they feel it is appropriate.  *Id*. ¶ 36.[22]

Gove has received training regarding the role of supervisors and other officers at an arrest scene in which physical force is being used.  *Id*. ¶ 145.  He was fully aware on July 17, 2004 that he had a duty to intervene if he saw any unreasonable or excessive physical force being used by any law enforcement officer against the plaintiff.  *Id*. ¶ 146.  He had no role in any decisions regarding what criminal charges were brought against the plaintiff or any prosecutorial decisions regarding those charges.  *Id*. ¶ 153.

Lajoie was never present at the scene on the night of July 17, 2004, was not at the police station when the plaintiff arrived that night, and did not have any contact with the plaintiff that night.  *Id*. ¶ 156.  The plaintiff did not file a complaint with the South Berwick Police Department concerning the conduct of deRochemont and Gove that night.  *Id*. ¶ 158.  At no time during the 180-day period following July 17, 2004 did Gove, deRochemont, Lajoie, the Town of South Berwick or its police department receive a notice of claim stating the plaintiff's intent to make a claim for damages.  *Id*. ¶¶ 159-62.  On July 17, 2004 liability coverage for the Town of South Berwick and its police officers was provided through the Maine Municipal Association's Property and Casualty Pool, a self-insured municipal risk pool.  *Id*. ¶ 163.  The pool provides coverage only in areas for which there is no immunity under state law.  *Id*. ¶ 164.  The town and its police officers were not covered by any policy of liability insurance applicable to claims brought by the plaintiff as a result of his arrest on July 17, 2004.  *Id*. ¶ 165.  The plaintiff has alleged that he suffered an injury to his right arm; his passenger

---

[22] The plaintiff purports to deny this paragraph of the municipal defendants' statement of material facts, but his denial is not responsive. Plaintiff's Municipal Responsive SMF ¶ 21.  The paragraph is accordingly deemed admitted to the extent supported by the citation given to the summary judgment record.

testified that she observed Shea to be the officer pulling the plaintiff's right arm up in the air, not deRochemont. *Id*. ¶¶ 166-67.

Shea had previously run checks on all of the vehicles at the plaintiff's residence that had New Hampshire license plates. Plaintiff's SMF ¶ 227; Municipal Responsive SMF ¶ 227; Shea Responsive SMF ¶ 156. Shea also ran a check on the persons to whom the vehicles were registered which would determine the registrant's address, driver's license status and motor vehicle violation record. *Id*. ¶ 236; ¶ 165.

### B. Discussion

Remaining for consideration with respect to defendant Shea are Counts One, Two, Fourteen and that portion of Count Five that asserts deprivation of a federally-protected liberty right. Shea contends that the doctrine of qualified immunity requires the entry of summary judgment in his favor as to Counts One, Two and Fourteen. Shea Motion at 9-19. He also seeks summary judgment on any claims for punitive damages. *Id*. at 19-20.

The other defendants seek summary judgment on all claims asserted against them. Municipal Motion.[23] Counts Three, Ten and Eleven appear to be asserted only against defendant Shea[24] and I therefore will not address them in connection with the motion of the municipal defendants. Count Eight is asserted only against the Town of South Berwick, Amended Complaint ¶¶ 80-86, and Count Nine is

---

[23] While the municipal defendants' motion is titled "Motion for Summary Judgment" and discusses only summary judgment in its opening paragraph, Municipal Motion at 1, at page 4 the motion suddenly begins to seek dismissal of many of the counts in the amended complaint, usually on the same basis asserted in Shea's motion to dismiss, *id*. at 4-10. It actually argues for summary judgment only with respect to Counts One, Two, Eight, Nine, Thirteen and Fourteen. *Id*. at 10-20. Despite the introductory material, I will treat the motion as counsel apparently intended, as one both for dismissal and for summary judgment.

[24] Count Ten alleges that "[a]s a direct and proximate result of the acts of Defendant Shea, the Plaintiff did suffer severe emotional distress . . . ." Amended Complaint ¶ 94. It goes on to assert that "the Defendants knew or should have known that their acts would cause such emotional distress . . . ." *Id*. In the unlikely event that this count is intended to reach any defendant other than Shea, the failure of the plaintiff to serve those defendants with the notice required under 14 M.R.S.A. § 8107, Municipal SMF ¶¶ 159-65; Plaintiff's Municipal Responsive SMF ¶¶ 159-65, discussed *infra*, entitles them to summary judgment on this count.

asserted only against the Town and Lajoie, *id*. ¶¶ 87-92.  I will first address the counts other than Counts Eight and Nine to which the defendants' qualified immunity arguments are not addressed.

1.  *Counts Six, Seven, Ten and Twelve.*   The municipal defendants contend that they are entitled to summary judgment on these counts to the extent that they raise state tort claims because they were not served with the notice of claim required by the Maine Tort Claims Act, specifically 14 M.R.S.A. § 8107.  Municipal Motion at 4.[25]  The plaintiff does not respond to this argument.  The municipal defendants' position is correct.  *See Smith v. Voisine*, 650 A.2d 1350, 1352 (Me. 1994).  They are entitled to summary judgment on Counts Seven and Ten (to the extent that it is asserted against any defendant other than Shea) and to those portions of Counts Six and Twelve that assert claims under state common law.

2.  *Counts One Through Five and Twelve.*   The municipal defendants contend that they are entitled to dismissal of Counts One through Five and Twelve to the extent that they seek recovery under the Maine Constitution because 42 U.S.C. § 1983 does not provide a mechanism for the redress of official conduct that violates state law.  Municipal Motion at 5.  The plaintiff responds as he did to the same argument made by Shea: he asserts that he "does not bring any of his § 1983 actions based upon violation of Maine's Constitution."   Plaintiff's Objection to Motion for Summary Judgment of Defendant's [sic] Dana Lajoie, Richard deRochemont, and Ernest Gove, etc. ("Municipal Opposition") (Docket No. 44) at 1.  The complaint clearly states such a claim in each of Counts One through Five.  Amended Complaint ¶¶ 56, 60, 65, 69, 71, 73.  Count Twelve does not assert a claim under the Maine Constitution.  The municipal defendants are entitled to dismissal of those portions of Counts One through Five that rest on the Maine Constitution.

---

[25] The municipal defendants address this argument to Count Eleven as well, Municipal Motion at 4, but that count cannot be read to assert allegations against any defendant other than Shea, Amended Complaint ¶¶ 96-98.

*3.  Counts Four, Five and Twelve.*   The municipal defendants repeat the argument made by Shea with respect to these counts that all claims of use of excessive force are to be analyzed under the Fourth Amendment only.  Municipal Motion at 5-6.  For the same reasons, while this statement of the law is correct, each of these counts must also be analyzed individually.

*4.  Count Four.*  The municipal defendants contend that this count fails to state a claim under the Fifth Amendment.  *Id.* at 7-8.  The plaintiff's response is identical to his response to Shea's argument for dismissal of Count Four, even to the reference to a single "Defendant."   *Compare* Municipal Opposition at 1-2 *with* Shea Opposition at 3.  The result is the same, for the reasons already stated. The municipal defendants are entitled to dismissal of Count Four.

*5.  Count Five.*  The municipal defendants contend that they are entitled to dismissal of Count Five under *Graham.*  Municipal Motion at 8.  The plaintiff again reproduces his response to Shea's motion to dismiss this count.  *Compare* Municipal Opposition at 2-4 *with* Shea Opposition at 3-5.  Again, the result is the same, for the same reasons.  All that survives the motion to dismiss is the plaintiff's liberty claim.

*6.  Count Six.*  The municipal defendants assert that they are entitled to dismissal of Count Six because the federal right to privacy does not encompass the claims asserted in the amended complaint. Municipal Motion at 8-9.  The plaintiff reproduces his response to Shea's motion to dismiss this count.  *Compare* Municipal Opposition at 4-5 *with* Shea Opposition at 5-6.  Again, the result is the same, for the same reasons — the scope of the constitutional right of privacy may not be extended to the circumstances alleged in this case.  To the extent that the plaintiff asserts that the municipal defendants have failed to address the portion of this count that is asserted under state law, Municipal Opposition at 4, I have recommended that the municipal defendants be granted summary judgment on that claim due to the plaintiff's failure to comply with 14 M.R.S.A. § 8107.

24

*7.  Count Twelve*.  The municipal defendants contend that abuse of process is not cognizable as a cause of action under 42 U.S.C. § 1983.  Municipal Motion at 10.  The plaintiff again repeats his response to Shea's motion.  *Compare* Municipal Opposition at 6-7 *with* Shea Opposition at 7-8.  For the same reasons, the municipal defendants are entitled to dismissal of Count Twelve.

*8.  Counts One, Two and Fourteen — Qualified Immunity.*[26]  Defendants Shea and deRochemont seek the entry of summary judgment on Count One.  Municipal Motion at 12-13, Shea Motion at 7-13.  Defendants Shea, deRochemont and Gove seek summary judgment on Count Two.  Municipal Motion at 13-15; Shea Motion at 13-18.  All of the defendants seek summary judgment on Count Fourteen.  Municipal Motion at 16-17; Shea Motion at 19.  All of these arguments are based on the doctrine of qualified immunity and for each of these counts all of the defendants named in that count seek summary judgment on this basis.

Count One alleges that Shea, DeRochemont and Gove "unreasonably, falsely and unlawfully arrest[ed] and confine[d] the Plaintiff and deprive[d] him of his liberty . . . in violation of his rights to be free from false arrest and imprisonment as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution . . . ."  Amended Complaint ¶ 54.  Count Two alleges that Shea and DeRochemont's "use of force was excessive, unreasonable and unprivileged, and deprived the Plaintiff of his rights, privileges, and immunities to be free from an unreasonable search and seizure as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution . . . ."  *Id*. ¶ 58.  Count Fourteen is brought pursuant to 5 M.R.S.A. § 4682 and alleges that all of the defendants "intentionally interfered, by threat, intimidation or coercion, with the exercise or enjoyment by

---

[26] The substance of the municipal defendants' argument with respect to Count Thirteen, which alleges a conspiracy under federal law, makes clear that they seek summary judgment on this count on the same bases as those asserted by Shea in his motion to dismiss. *Compare* Municipal Motion at 15-16 (subsection mistakenly numbered "2," but apparently meant to be "3") *with* Shea Motion at 7. The municipal defendants are entitled to summary judgment on Count Thirteen for the same reasons as those entitling Shea to dismissal of that count.

Plaintiff of rights secured by the Constitution and laws of the United States and/or Constitution and laws of the State of Maine." *Id*. ¶¶ 106, 108.  That section of the Maine Civil Rights Act provides, in relevant part:

> Whenever any person . . . intentionally interferes or attempts to intentionally interfere by physical force or violence against a person . . . or by the threat of physical force or violence against a person . . . with the exercise or enjoyment by any other person of rights secured by the United States Constitution or the laws of the United States or of rights secured by the Constitution of Maine or laws of the State . . . the person whose exercise or enjoyment of these rights has been interfered with, or attempted to be interfered with, may institute and prosecute in that person's own name and on that person's own behalf a civil action for legal or equitable relief.

5 M.R.S.A. § 4682(1-A).  Counts One and Two are brought pursuant to 42 U.S.C. § 1983.  Amended Complaint ¶¶ 56, 60.  The Maine Civil Rights Act is patterned on section 1983 and disposition of a claim under the latter controls a claim under the former.  *Forbis v. City of Portland*, 270 F.Supp.2d 57, 61 (D. Me. 2003).  This includes a defense of qualified immunity.  *Jenness v. Nickerson*, 637 A.2d 1152, 1159 (Me. 1994).

The qualified immunity defense "provides ample protection to all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  It "gives ample room for mistaken judgments."  *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).   To assess whether a state actor is entitled to qualified immunity a court must consider

> (i) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at issue was clearly established at the time of the putative violation; and (iii) whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right.

*Limone v. Condon*, 372 F.3d 39, 44 (1st Cir. 2004) (citation omitted).

*(i) Count One*

With respect to Count One, the plaintiff apparently contends that he has shown a violation of the Fourth Amendment to the United States Constitution. Shea Opposition at 14. He does not identify any constitutional provision with respect to the municipal defendants. Municipal Opposition at 11-13. Under these circumstances he has waived any contention that a violation of the Fourteenth Amendment to the United States Constitution or the provisions cited in the amended complaint in connection with this count, Amended Complaint ¶ 54, meet the first prong of the qualified immunity test.[27] I would conclude as well that the plaintiff's failure to identify any constitutional provision with respect to his claim against the two municipal defendants named in Count One precludes any further consideration of his opposition to the assertion of qualified immunity against those defendants, but out of an abundance of caution I will consider the merits of a Fourth Amendment-based claim against them as well as Shea.

The plaintiff contends that Shea, deRochement and Gove lacked probable cause to arrest him, or, more specifically, that the evidence on this point is in dispute, and that this is sufficient to avoid the application of qualified immunity before trial. Shea Opposition at 14-17.[28]

> Probable cause exists when the arresting officer, acting upon apparently trustworthy information, reasonably concludes that a crime has been (or is about to be) committed and that the putative arrestee likely is one of the perpetrators.

---

[27] To the extent that the strictures of *Lopez v. Corporación Azucarera de Puerto Rico*, 938 F.2d 1510, 1517 (1st Cir. 1991), require this court nonetheless to reach the merits of the plaintiff's putative position on each of the pleaded constitutional provisions, I find nothing in the plaintiff's statements of material facts that would establish a violation of the Fourteenth Amendment to the United States Constitution, standing alone, nor of Article I § 1 (natural rights) or Article I § 6-A (due process; discrimination) of the Maine Constitution. Article I § 5 of the Maine Constitution prohibits unreasonable searches and seizures, but not to a greater extent than does the federal Fourth Amendment. *State v. Tarantino*, 587 A.2d 1095, 1098 (Me. 1991). My discussion of the federal claim in the text accordingly applies to the claim asserted under Article I § 5 of the Maine Constitution as well.

[28] The plaintiff also appears to contend that the question of the existence of probable cause in connection with a qualified immunity defense in a civil case may only be decided at trial, by the jury. Shea Opposition at 14. This contention is incorrect. The question of probable cause in connection with a qualified immunity defense is often resolved by a court on summary judgment. *See, e.g., Clark v. Webster*, 384 F.Supp.2d 371, 378-79 (D. Me. 2005); *Cox v. Maine State Police*, 324 F.Supp.2d 128, 130-34 (D. Me. 2004). *See also St. Hilaire v. City of Laconia*, 71 F.3d 20, 24 & n.1 (1st Cir. 1995) ("The ultimate question of qualified immunity should ordinarily be decided by the court."); *Roy v. Inhabitants of the City of Lewiston*, 42 F.3d 691, 694 (1st Cir. 1994) (qualified immunity claims are to be resolved before trial, where possible).

*Cox v. Hainey*, 391 F.3d 25, 31 (1st Cir. 2004) (citation and internal quotation marks omitted).  The test is whether an objectively reasonable officer would have concluded at the time that the available facts added up to probable cause.  *Id*.  "[A]n arrest challenged as unsupported by probable cause is deemed 'objectively reasonable' unless 'there *clearly* was no probable cause at the time the arrest was made.'"  *Topp v. Wolkowski*, 994 F.2d 45, 48 (1st Cir. 1993) (emphasis in original; citation omitted).

The two South Berwick officers named in Count One contend that the plaintiff had already been "seized" by Shea before they arrived on the scene and that there was no time for deRochemont to inquire about the circumstances that led to the struggle then ongoing between Shea and the plaintiff.  Municipal Motion at 12.  They contend that the undisputed facts establish that they reasonably believed that Shea had probable cause to arrest the plaintiff and assisted him as requested.  *Id*. at 13.  The plaintiff responds that deRochemont and Gove had a legal duty to intervene on his behalf and that Shea's activities leading up to the arrest "should be taken into account."  Municipal Opposition at 12. The latter contention is incorrect as a matter of law and not supported by the sole authority cited by the plaintiff.  *St. Hilaire v. City of Laconia*, 71 F.3d 20 (1st Cir. 1995).[29]  While that case does hold that "once it has been established that a seizure has occurred, the court should examine the actions of the government officials leading up to the seizure," *id*. at 26, but neither Gove nor deRochemont was the "instrumentality [that] set [the seizure] in motion," *id*.  The "instrumentality" was Shea, and under the circumstances neither deRochemont nor Gove could have known what led up to the struggle they witnessed when they arrived.  With respect to the plaintiff's first contention, the First Circuit has observed that

---

[29] Counsel for the plaintiff is reminded that pinpoint citations are required in a memorandum of law.  Merely citing to an opinion as a whole is not sufficient.

> police officers *sometimes* have an affirmative duty to intervene that is
> enforceable under the Due Process Clause.  For example, an officer who is
> present at the scene of an arrest and who fails to take reasonable steps to
> protect the victim of another officer's use of excessive force can be held
> liable under section 1983 for his nonfeasance, provided that he had a
> realistic opportunity to prevent the other officer's actions.

*Martinez v. Colon*, 54 F.3d 980, 985 (1st Cir. 1995) (emphasis in original; citation and internal

punctuation omitted).  Two problems with the plaintiff's reliance on this case law with respect to his

claims against deRochemont and Gove are immediately apparent: he has pressed the Count One claim

only under the Fourth Amendment, not the Fourteenth Amendment, which would be the source of a due

process claim, and Count One does not present an excessive force claim.  Count One is concerned

only with the allegedly wrongful arrest.

The parties' statements of material facts present only the following relevant assertions

concerning deRochemont and Gove with respect to the arrest: "[b]efore arriving at the scene, the only

information that Defendants deRochemont and Gove had was from the dispatcher that it was a 10-53

situation," Plaintiff's SMF ¶ 319; "[t]he 10-53 situation refers to a person suspected of operating

under the influence or a subject intoxicated or believed to be intoxicated," *id. ¶* 320; deRochemont

did not speak to Shea before intervening, *id*. ¶ 327; deRochemont participated in removing the plaintiff

from his vehicle, *id*. ¶ 332; deRochemont applied handcuffs to the plaintiff, *id*. ¶ 347.[30]  DeRochemont

had been advised by the dispatcher that the 10-53 subject was "giving [Shea] a hard time," Municipal

SMF ¶ 42; Plaintiff's Municipal Responsive SMF ¶ 42, and he assumed as he drove to the scene that

Shea was trying to make an arrest of a driver suspected of operating under the influence while the

driver was resisting Shea's efforts to take him into custody, *id*. ¶ 46.[31]  As Gove approached the scene,

---

[30] Other paragraphs in the plaintiff's statement of material facts that mention deRochemont and Gove in this regard are not listed here because the defendants have raised appropriate objections that render the statements in those paragraphs inadmissible as evidence. Plaintiff's SMF ¶¶ 325-26, 328-29, 335, 337-38, 346, 354-56, 359-61 & defendants' responses thereto.

[31] The plaintiff purports to deny this paragraph of the municipal defendants' statement of material facts, Plaintiff's Municipal Responsive (*continued on next page*)

his attention was diverted to the plaintiff's girlfriend, whom he ordered to stand back and not to interfere. *Id*. ¶¶ 108, 110.  The plaintiff was placed in Gove's cruiser. *Id*. ¶ 102.  Gove transported the plaintiff to the police station without incident.  *Id*. ¶ 118.

On these facts, it is not possible to conclude that Gove was involved at all in the arrest of the plaintiff — the plaintiff was already arrested before he was placed in Gove's cruiser — and any alleged duty to intervene goes to the excessive force alleged in Count Two or a due process claim under the Fourteenth Amendment, not to the arrest.  Based on what knowledge he is shown to have had at the time, Gove is entitled to qualified immunity on Count One.  While the question is somewhat closer as to deRochemont, he had probable cause to arrest the plaintiff, if indeed he can be said to have done so, based on a reasonable belief that the plaintiff had committed a crime.

The outcome is different for defendant Shea.  He also asserts that he is entitled to qualified immunity with respect to Count One because he had probable cause to arrest the plaintiff.  Shea Motion at 9-12.  He begins his argument by asserting that "[t]he events occurring after Trooper Shea approached Royer's car gave him probable cause to arrest for several serious criminal offenses." *Id.* at 11.  However, the appropriate place to begin the analysis is before Shea approached the car. *St. Hilaire*, 71 F.3d at 26 (once it has been established that a seizure occurred, court should examine actions of officials leading up to seizure).  Shea's assertions that the plaintiff's car, which the parties agree was on the side of Beaver Dam Road at the relevant time, had its high beam headlights on, that he flashed his cruiser spotlight toward the plaintiff's car as a signal for him to dim his high beams, and that the plaintiff failed to do so, leading Shea to turn his cruiser onto Beaver Dam Road, stop slightly beyond the plaintiff's car and approach the car on foot, are all adequately disputed by the plaintiff.  Shea SMF ¶¶ 7-8, 10, 13; Plaintiff's Shea Responsive SMF ¶¶ 7-8, 10, 13.  Shea goes on to assert that

SMF ¶ 46, but the denial does not address the statements made in the paragraph, which is accordingly deemed admitted to the extent (*continued on next page*)

30

his training, education and experience taught him that a motorist who fails to dim his headlights in response to a flashed signal might be operating under the influence of drugs or alcohol, thereby imposing on him a duty to investigate the stopped vehicle. Shea SMF ¶¶ 12-14. But if the headlights were not on high beam, in the absence of any indication that Shea nonetheless reasonably believed them to have been, the factual basis of Shea's qualified-immunity argument disappears. Shea also contends that the plaintiff's alleged failure to dim his high beams violated 29-A M.R.S.A. § 2067(2),[32] giving him "reasonable articulable suspicion to approach" the plaintiff's vehicle, Shea Motion at 8-9, but this assertion similarly fails if the plaintiff's denial of the underlying fact is credited.

I note that many of the facts on which Shea bases his qualified-immunity argument with respect to the period of time after he approached the plaintiff's car are also disputed: (i) "[a]s soon as Shea approached his car, Royer said, 'Get the fuck out of my driveway,'" Shea Motion at 11, Shea SMF ¶ 19, Plaintiff's Shea Responsive SMF ¶ 19; (ii) "Royer's assertion that Trooper Shea had 'no jurisdiction' on a public street in Maine," Shea Motion at 11, Shea SMF ¶ 22, Plaintiff's Shea Responsive SMF ¶ 22; (iii) the plaintiff "telling Trooper Shea that Shea knew him when Shea did not," Shea Motion at 11, Shea SMF ¶ 24, Plaintiff's Shea Responsive SMF ¶ 24; (iv) the plaintiff's "screaming at Shea," Shea Motion at 11, Shea SMF ¶ 25, Plaintiff's Shea Responsive SMF ¶ 25; (v) the plaintiff's "volatile" conduct toward Shea, Shea Motion at 11, Shea SMF ¶¶ 19, 22, 25, 27, 35, Plaintiff's Shea Responsive SMF ¶¶ 19, 22, 25, 27, 35; (vi) the plaintiff's "refusal to produce his license and registration," Shea Motion at 11, Shea SMF ¶¶ 22, 26, Plaintiff's Shea Responsive SMF ¶¶ 22, 26; (vii) the plaintiff "lighting a cigarette after rolling up his car window," Shea Motion at 11,

---

supported by the citation given.

[32] The plaintiff also raises a significant question as to whether this statute could have been violated under the undisputed factual circumstances at the time. Shea Opposition at 14. The statute provides, in relevant part: "When a vehicle equipped with multiple-beam road lights approaches an oncoming vehicle within 500 feet or follows a vehicle within 300 feet, the operator shall dim the headlights or switch to a low beam . . . ." 29-A M.R.S.A. § 2067(2). It is not necessary for this court to determine at this time (*continued on next page*)

Shea SMF ¶ 35, Plaintiff's Shea Responsive SMF ¶ 35; (viii) the plaintiff "tried to kick Shea," Shea Motion at 12, Shea SMF ¶ 54, Plaintiff's Shea Responsive SMF ¶ 54; and (ix) the plaintiff's "admission to Shea that he 'went too far' that night," Shea Motion at 12, Shea SMF ¶ 66, Plaintiff's Shea Responsive SMF ¶ 66.  It should not bear repeating that a defendant is entitled to summary judgment on the basis of qualified immunity only when such a determination is grounded on undisputed facts.

Shea is not entitled to summary judgment on Count One.

*(ii) Count Two*

Shea contends that his use of force did not violate the plaintiff's Fourth Amendment rights and that, in the alternative, it would not have been clear to an objectively reasonable officer that his use of force violated the plaintiff's clearly established Fourth Amendment rights.  Shea Motion at 13-18. DeRochemont contends[33] that his actions were objectively reasonable under the circumstances. Municipal Motion at 14.  Apparently conceding that Count Two involves only an asserted violation of the Fourth Amendment, Shea Opposition at 17, Municipal Opposition at 13, the plaintiff argues that the objective reasonableness of the defendants' use of force is very much disputed, Shea Opposition at 18-21, Municipal Opposition at 14-16.   His response to Shea's first argument is not a model of clarity, but he apparently contends that the only issue is "whether or not the officer used force in contravention with [sic] clearly established law."  Shea Opposition at 20.

In order to determine whether the Fourth Amendment was violated in a given case, the Supreme Court in *Graham* directs a court to carefully balance the "nature and quality of the intrusion

---

whether an admittedly stationary vehicle could reasonably be deemed to be "approaching" or "following" anything. Shea in any event has not offered evidence that a reasonable police officer would have so interpreted the statute.

[33] The municipal motion assumes that Count Two is asserted against "[t]he South Berwick officers," Municipal Motion at 13, 15, but the amended complaint mentions only Shea and deRochemont in Count Two. Amended Complaint ¶¶ 57-60.  I will accordingly consider only Shea and deRochemont with respect to the qualified immunity defense to this count, despite the plaintiff's use of the (*continued on next page*)

on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396. The reasonableness of an officer's use of force must be judged from the perspective of a reasonable officer on the scene "rather than with the 20/20 vision of hindsight." *Id*. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Id*. at 396-97.

Shea relies on *Smith v. City of Chicago*, 242 F.3d 737 (7th Cir. 2001), to support his contention that his use of force did not violate the plaintiff's Fourth Amendment rights. Shea Motion at 14-15. In that case, the plaintiff sued police officers alleging, *inter alia*, the use of excessive force in conducting a traffic stop. *Smith*, 242 F.2d at 740. Whether the plaintiff actually committed the traffic violation in question was not relevant to the evaluation of the excessive force claim. *Id*. at 743. From the officers' viewpoint, the plaintiff committed a traffic violation, after which he ignored their siren and signal to pull over for a distance of twelve blocks. *Id*. at 744. When his car was stopped by marked police cars, the officers pulled the plaintiff out of the car, pinned his arms behind his back, slammed him against the hood of his car and handcuffed him. *Id*. The court held that a reasonable officer in these circumstances would have believed that the plaintiff was trying to flee, thereby justifying the use of a higher degree of force than needed for someone who had committed only a minor traffic violation. *Id*.

Shea justifies his use of the force involved in this case by the plaintiff's "decision to flee the scene (injuring Shea in the process)," and his "decision to resist arrest even after Officer de Rochemont arrived." Shea Motion at 15. The plaintiff responds that the provisions of 17-A M.R.S.A.

---

plural and a specific argument concerning Gove in connection with this count. Municipal Opposition at 15-16.

§ 107 do not apply to Shea's actions in this case and "[a]ccordingly, liability would exist for unlawful force." Shea Opposition at 18. This conclusion does not follow from the plaintiff's premise. Nor can a state statute, standing alone, provide all of the necessary information for evaluation of a defense to a federal constitutional claim. The statute provides, in relevant part:

> A law enforcement officer is justified in using a reasonable degree of nondeadly force upon another person:
> **A**. When and to the extent that the officer reasonably believes it necessary to effect an arrest or to prevent the escape from custody of an arrested person, unless the officer knows that the arrest or detention is illegal; or
> **B.** To defend himself or herself or a 3rd person from what the officer reasonably believes to be the imminent use of unlawful nondeadly force encountered while attempting to effect such an arrest or while seeking to prevent such an escape.

17-A M.R.S.A. § 107(1). The plaintiff avers that he "has reasonable evidence that Shea knew the illegality of his arrest." Shea Opposition at 19. At best, this factual assertion is disputed. Accordingly, at the summary judgment stage of this case, the court cannot conclude that Shea's use of force did not come within the terms of the Maine statute. Even if it did, the issue of the availability of qualified immunity is not thereby resolved.

Shea also relies on the testimony of deRochement and Gove to the effect that they did not see Shea do anything that made them uncomfortable and that Shea's use of force was consistent with their training and experience. Shea Motion at 15-16. The plaintiff responds, "These are not objective bystanders" and "[T]hey are not qualified as experts." Shea Opposition at 20. Their testimony, the plaintiff asserts, "is not evidence of the reasonableness, but rather conspiracy in their testimony to deprive Plaintiff of his claim." *Id.* Perhaps the officers are no more objective witnesses than is the plaintiff's passenger under the circumstances. The cited testimony does not appear to be an expression of expert opinion. In any event, this testimony also is not determinative on the question at hand.

Shea contends that he "had objectively reasonable grounds to believe that Royer had committed several serious crimes" before he used any force.  Shea Motion at 15.  He apparently means to refer to reckless conduct, 17-A M.R.S.A. § 211(1), failing to stop for an officer, 29-A M.R.S.A. § 2414(2), assault, 17-A M.R.S.A.§ 207, operating under the influence, 29-A M.R.S.A. § 2411, assault on a police officer, 17-A M.R.S.A. § 752-A(1)(A), and refusing to submit to arrest or detention, 17-A M.R.S.A.§ 751-A(1), listed earlier in his motion.  *Id*. at 12-13.  He does not specify when he contends that he first used force.  The plaintiff describes the following scenario:  He contends that, after he "grabbed his registration" and told Shea that his driver's license was in the house and offered to get it, Shea "yelled very loudly" for him to get out of the car.  Plaintiff's SMF ¶¶ 258, 260.  The plaintiff then asked, "Why?" and Shea stated that the plaintiff was under arrest.  *Id*. ¶¶ 261-62.  The plaintiff asked, "For what?" and Shea replied, "Assault."  *Id*. ¶¶ 263-64.  The plaintiff asked, "Assaulting what, my mail?" *Id*. ¶ 266.  Shea then "began grabbing at the outside [car] door handle" and "began to reach through the open window . . . for the inside door handle."  *Id*. ¶¶ 269, 272.  The plaintiff then "triggered the power switch to raise the car window."  *Id*. ¶ 274.  Shea then stuck his flashlight into the car window to stop it from rolling all the way up.  *Id*. ¶ 275.  Shea used an instrument to pry at the window.  *Id*. ¶ 280.  Shea began yelling, "You're going to jail, boy."  *Id*. ¶ 283.[34]

According to the plaintiff, Shea then opened the rear door of the car and reached in toward the plaintiff.  *Id*. ¶ 286.  He could not reach the plaintiff, stepped away from the car and spoke into his communication equipment.  *Id*. ¶¶ 287-90.  The plaintiff then "pulled a short distance into his

---

[34] All of the defendants object to this paragraph of the plaintiff's statement of material facts on the ground that "no such allegations are made in the Plaintiff's Amended Complaint."  Municipal Defendants' Responsive SMF ¶ 283, Shea Responsive SMF ¶ 213.  I am not aware of any requirement that a plaintiff allege in his complaint all of the facts he may eventually use in opposing a defendant's motion for summary judgment.  Such a requirement would be at odds with the well-known principle of notice pleading.  *See, e.g., Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-14 (2002).  The paragraph at issue cannot reasonably be construed to state a legal

(*continued on next page*)

driveway." *Id.* ¶ 296. Shea contends that he was still inside the plaintiff's car when the plaintiff drove into his driveway and that Shea was injured by a pillar behind the back door of the car. Shea Responsive SMF ¶ 218. The plaintiff goes on to contend that Shea then opened the car door and "grabbed at the Plaintiff's shirt with such force as to rip the shirt." Plaintiff's SMF ¶ 303. Shea used his collapsible baton to poke at the plaintiff. *Id.* ¶ 304. Shea grabbed the plaintiff's legs and tried to pull him from the car. *Id.* ¶ 305. The plaintiff held on to the steering wheel and did not get out of the car. *Id.* ¶ 308. As soon as he became aware that someone else was present, he let go of the steering wheel. *Id.* ¶ 333. Shea and deRochemont "threw [the plaintiff] on the ground." *Id.* ¶ 335. He was dropped from a height of two feet. *Id.* ¶ 336. The plaintiff never struggled and cooperated fully from the time he was removed from the car. *Id.* ¶ 341.

Shea pulled at the plaintiff's right arm in a way that, if continued, could break or damage the anatomical structures of the arm. *Id.* ¶ 342. DeRochemont placed handcuffs on the plaintiff. *Id.* ¶ 347. While the plaintiff was on the ground and handcuffed, Shea "dropped his knee onto the Plaintiff's upper back/shoulder area." *Id.* 349. Shea caused physical injury to the plaintiff. *Id.* ¶ 353. During a pat down, Shea squeezed the plaintiff's testicles very hard. *Id.* ¶ 357.[35]

According to Shea, he first touched the plaintiff after the plaintiff had driven into his driveway and Shea had been struck by a pillar of the plaintiff's car. Shea SMF ¶¶ 44-46. The plaintiff was "resisting, kicking, [and] swinging his free arm" as Shea and deRochemont carried him from the car to the lawn. *Id.* ¶ 59. Shea asserts that "[i]f he had simply done nothing and waited for backup to arrive, he ran the risk that Royer might seek refuge in his house," and that "[i]f, on the other hand, Shea had . .

---

or equitable claim not included in the amended complaint, which might give rise to a valid objection. The stated objection is overruled.

[35] The defendants object to this paragraph on the ground that "the Plaintiff did not allege that Trooper Shea squeezed his testicles in either his Complaint or Amended Complaint." Shea Responsive SMF ¶ 287; Municipal Defendants' Responsive SMF ¶ 357 ("This paragraph should be stricken because the plaintiff did not allege that Trooper Shea used force against him in this manner in either his Complaint or Amended Complaint."). For the reasons stated in the preceding footnote, these objections are overruled.

. allowed Royer to remain in his car, he ran the risk that Royer might flee the scene." Shea Motion at 15.

Using the plaintiff's version of the facts, I would nonetheless conclude that the use of force alleged by Shea was reasonable under the circumstances, *see generally Gaudreault v. Municipality of Salem*, 923 F.2d 203, 205-07 (1st Cir. 1990), were it not for the allegation concerning the squeezed testicles. A reasonable jury could conclude that it was not reasonable for a police officer to do this or to believe that this use of force was lawful. *See Ting v. United States*, 927 F.2d 1504, 1511 (9th Cir. 1991). The jury will first have to decide whether Shea did this, of course. The plaintiff's contention that he was entitled to resist Shea under 17-A M.R.S.A. § 108, Shea Opposition at 18-19, may come into play at that time.

The result with respect to deRochemont's invocation of the doctrine of qualified immunity again differs from that of Shea as to this count. The plaintiff asserts that "Defendant was without any probable cause for any investigatory stop, arrest, or conduct with regards to the Plaintiff. Accordingly, any and all use of force by the Defendants was unreasonable." Municipal Opposition at 15. This global argument does not address the circumstances faced by deRochemont when he arrived on the scene. He did not participate in any investigatory stop; he did not arrest the plaintiff and had no intent to do so upon his arrival. The plaintiff goes on to discuss the "Defendants'" obligation to intervene on behalf of the plaintiff. *Id*. at 15-16. As discussed above, this theory is relevant to Count One, not to Count Two, insofar as it is asserted against deRochemont. The plaintiff makes no other argument with respect to deRochemont's liability on Count Two. None of the facts alleged against deRochemont, *see* Plaintiff's SMF ¶¶ 319-27, 330-32, 335-36, 341, 347, 351, if taken as true, would defeat his assertion of qualified immunity, whether considered alone or together. DeRochemont is entitled to summary judgment on Count Two.

37

### *(iii)  Count Fourteen*

Because analysis of a defense of qualified immunity to a claim under the Maine Human Rights Act tracks that of a similar claim under section 1983, I conclude that Gove is entitled to summary judgment on this count for the reasons already discussed.  Because Shea is not entitled to summary judgment on Counts One and Two, he is not entitled to summary judgment on this count.  Because deRochemont is entitled to summary judgment on Counts One and Two and Gove is entitled to summary judgment on Count One, they are entitled to summary judgment on Count Fourteen as well.

9.  *Counts Eight and Nine.*  Count Eight alleges that the Town of South Berwick is liable to the plaintiff due to a failure to train its police officers adequately and due to a policy and custom of deliberate indifference to the constitutional rights of its residents.  Amended Complaint ¶¶ 80-84. Count Nine alleges that Lajoie is liable for the injuries suffered by the plaintiff at the hands of Gove and deRochemont and that the Town is liable under the doctrine of *respondeat superior* for the tortious conduct of Gove and deRochemont.  *Id.* ¶¶ 87-92.  The amended complaint states that the plaintiff "does not allege respondeat superior for his constitutional claims."  *Id.* ¶ 92.  The town asserts that it is absolutely immune from any tort claims under 14 M.R.S.A. § 8103.  Municipal Motion at 20.  The plaintiff does not respond to this argument.  I do not read Count Nine to assert any tort claims directly against the town.  With respect to the plaintiff's allegation of *respondeat superior* liability, I have recommended that all state-law tort counts asserted against deRochemont and Gove be dismissed.  Accordingly, there is nothing to which the town's *respondeat superior* liability may attach, and the town is therefore entitled to summary judgment on Count Nine.

Count Eight alleges municipal liability on the basis of inadequate supervision of the police department, approval of or acquiescence in the unlawful exercise of police powers, gross negligence and deliberate indifference in training of police officers, and toleration of or acquiescence in "a code

of silence" which manifests deliberate indifference to constitutional rights.  Amended Complaint

¶¶ 82-83.  "To make out a case for municipal liability under 42 U.S.C. § 1983, the Supreme Court has

repeatedly held that liability can be found only where the municipality *itself* causes the constitutional

violation at issue."  *Santiago*, 891 F.3d at 381 (emphasis in original; citation and internal quotation

marks omitted).

> Thus, a plaintiff must show that a policy or custom of the city led to the
> constitutional deprivation alleged.  This requires that plaintiff demonstrate
> both the existence of a policy or custom and a causal link between that policy
> and the constitutional harm.

*Id*. (citations omitted).  The plaintiff apparently reverses his discussion of Counts Eight and Nine

because he discusses Lajoie's liability in connection with Count Eight and the Town's liability

separately.  Municipal Opposition at 19-22.  I assume that this is an inadvertent error.  The plaintiff's

entire discussion of the basis for municipal liability in this case, as distinct from a recitation of

applicable law, is the following:

> No one on the Defendant Police Department has ever themselves
> committed or allegedly has seen another office[r] commit an act of
> unreasonable force or false arrest.  South Berwick is either a perfect police
> department, is ignoring violations, or is not trained to recognize them.
> Defendants' blanket assertion of doing everything right cannot be accepted on
> [sic] face value, especially in light of a prima facie case of no effort to
> uncover violations.  No member of the Police Department has ever seen or
> heard of anyone disciplined for unreasonable force or unlawful arrest, and
> accordingly, could not have formed a belief that discipline for the same
> occurs.  The Police Department made no use of the Use of Force reports.
> The Use of Force reporting requirements have not even been understood by
> the department.  There was no investigation of this complaint.
>
> These facts establish a municipal custom of a police department running
> amok.  This is the causal link.

*Id*. at 22.  There is no citation to a statement of material facts in support of this argument.  If "this

complaint" refers to the incident giving rise to this action, the plaintiff has admitted that he made no

complaint.  Municipal SMF ¶ 158; Plaintiff's Municipal Responsive SMF ¶ 158.

Many of the other factual allegations that support this argument are disputed by the defendants, but that does not end the summary judgment analysis of this claim. The plaintiff fails to identify a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the town, *Monell v. Department of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 690 (1978), that led to the actions of deRochemont and Gove that are alleged to have cause the plaintiff injury. Even if the plaintiff's argument may charitably be interpreted as an assertion that the South Berwick police department had a "longstanding, wide-spread, and facially unconstitutional practice" of ignoring the use of force such that the policymaking officials of the town can be said to have actual or constructive knowledge of the practice, *see Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989), the evidence he cites would not allow a reasonable factfinder to draw that conclusion. Nor could a factfinder reasonably conclude, from the cited evidence, that South Berwick had a policy of inadequate training of its police officers. *See Santiago*, 891 F.2d at 381-82. On the showing made, the defendant town is entitled to summary judgment on Count Eight.

With respect to Lajoie, the plaintiff argues that he "took no adequate measures whatsoever to know whether or not members of the South Berwick Police Department were using unreasonable force or false arrests. . . . Lajoie created a situation where his officers knew that it [sic] could avoid any oversight. This amounts to actual deliberate indifference . . . ." Municipal Opposition at 20. This argument is apparently based on paragraphs 377-84, 389-94, 396-400 and 407-11 of the plaintiff's statement of material facts. Only one of those paragraphs is admitted by the defendants. Municipal Responsive SMF ¶ 377. Those paragraphs, shorn of counsel's characterizations and other assertions to which the defendants have properly objected, *id.* ¶¶ 378, 380-84, 389-94, 396-400, 407-10, assert that deRochemont and Gove were trained to intervene on behalf of citizens but had never heard of an officer intervening on behalf of a citizen, Plaintiff's SMF ¶ 377; deRochemont and Gove had never

seen another officer use unreasonable force or heard of anyone being criticized for that, *id*. ¶ 378; deRochemont and Gove were not aware of any system that the Town of South Berwick used to determine whether police officers were properly using force and their powers of arrest and detention, *id*. ¶ 379; deRochemont did not know whether he was ever evaluated in this context, *id*. ¶ 380; Lajoie's evaluation of an officer's report was limited to whether it was thorough and reliable, *id*. ¶ 383; and Lajoie did not know of more than one incident in which a police officer reported another officer for using more force than necessary in making an arrest, *id*. ¶¶ 397, 407.  These assertions, considered together, are not enough to allow a reasonable factfinder to reach the conclusions posited by the plaintiff.  The plaintiff's conclusions are entirely speculative.

The First Circuit has observed:

> Although a superior officer cannot be held vicariously liable under 42 U.S.C. § 1983 on a *respondeat superior* theory, he may be found liable under section 1983 on the basis of his own acts or omissions.

> One way in which a supervisor's behavior may come within this rule is by formulating a policy, or engaging in a custom, that leads to the challenged occurrence.  Thus, even if a supervisor lacks actual knowledge of censurable conduct, he may be liable for the foreseeable consequences of such conduct if he would have known of it but for his deliberate indifference or willful blindness, and if he had the power and authority to alleviate it.

> Under this rubric, a supervisor may be held liable for what he does (or fails to do) if his behavior demonstrates deliberate indifference to conduct that is itself violative of a plaintiff's constitutional rights.  Deliberate indifference, however, is not the be-all and the end-all of a section 1983 claim premised on supervisory liability. . . .

> To succeed on a supervisory liability claim, a plaintiff not only must show deliberate indifference or its equivalent, but also must affirmatively connect the supervisor's conduct to the subordinate's violative act or omission.  This causation requirement can be satisfied even if the supervisor did not participate directly in the conduct that violated a citizen's rights; for example, a sufficient ca[us]al nexus maybe found if the supervisor knew of, overtly or tacitly approved of, or purposely disregarded the conduct. . . .

> A causal link may also be forged if there exists a known history of widespread abuse sufficient to alert a supervisor to ongoing violations. When the supervisor is on notice and fails to take corrective action, say, by better training or closer oversight, liability may attach.

*Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 581-82 (1st Cir. 1994) (citations omitted). In this case, the plaintiff offers no argument that Lajoie formulated a policy that caused the plaintiff's alleged injury. Nor does he attempt to show a known history of widespread abuse. At most, he argues that Lajoie demonstrated deliberate indifference. Even if the evidence cited by the plaintiff could reasonably be interpreted to demonstrate deliberate indifference, a proposition that I have rejected, the plaintiff has not cited evidence of a causal link between that indifference and what he alleges happened in this case. He cites *Maldonado-Denis* for the proposition that "there would appear to be a condoned code of silence on" the use of unreasonable force or false arrest, "which is actionable," Municipal Opposition at 20, perhaps thereby intending to argue that a causal connection exists. It is difficult to evaluate the plaintiff's reliance on *Maldonado-Denis* without a pinpoint citation, but that opinion does not refer to a police "code of silence." If the plaintiff means to suggest that Lajoie "knew of, overly or tacitly approved of, or purposely disregarded" conduct by Gove or deRochemont that violated the plaintiff's rights, *Maldonado-Denis*, 23 F.3d at 582, he has made no showing that Lajoie was made aware of any such conduct by the plaintiff or by anyone else. In fact, he admits that he did not file a complaint about the events of July 17, 2004. Municipal SMF ¶ 158; Plaintiff's Municipal Responsive SMF ¶ 158.

Lajoie is entitled to summary judgment on Count Nine.

### C.  Punitive damages

The defendants seek summary judgment on any claims for punitive damages. Shea Motion at 19-20; Municipal Motion at 17. The plaintiff seeks punitive damages on every remaining count other than Count Fourteen. Amended Complaint ¶¶ 56, 60, 73. If the court adopts my recommendation, only

federal claims under Counts One, Two and Five will remain as counts on which a demand for punitive damages is made. In order to recover punitive damages on any of those claims, the plaintiff must show that the defendant's alleged conduct was motivated by evil motive or intent, or that the defendant demonstrated reckless or callous indifference to the plaintiff's federally-protected rights. *Smith v. Wade*, 461 U.S. 30, 56 (1983). The plaintiff asserts that the defendants' conduct "satisfies either one of these standards." Shea Opposition at 22; Municipal Opposition at 18.

The plaintiff's proffered evidence against deRochement and Gove, who will remain defendants only with respect to the surviving portion of Count Five, does not begin to reach either standard even with the benefit of reasonable inferences to be drawn from it. Given the information provided to Gove and deRochemont before their arrival on the scene, and what they witnessed when they arrived, a reasonable factfinder could not conclude that they acted "in the face of a perceived risk that [their] actions [would] violate federal law." *Iacobucci v. Boulter*, 193 F.3d 14, 26 (1st Cir. 1999) (citation omitted). Neither deRochemont nor Gove arrested the plaintiff. There is nothing more than the plaintiff's speculation to suggest that these officers "falsely den[ied] seeing the violations," if any, committed by Shea. Municipal Opposition at 19. DeRochemont and Gove are entitled to summary judgment on any claim asserted against them for punitive damages.

A different result applies to the summary judgment evidence against Shea. If Shea did squeeze the plaintiff's testicles while conducting a pat-down, evil motive or intent may be inferred, as well as reckless or callous indifference to the plaintiff's Fourth Amendment rights.

## V. Request for Sanctions

In his opposition to Shea's motion, the plaintiff asks the court to award him attorney fees and costs for three-quarters of the time spent responding to Shea's motion. Shea Opposition at 24-25. He is entitled to this sanction, he asserts, because "[o]f Defendant's 95 paragraphs of material facts, only

43

28 have been admitted, . . . Defendant's statement of material facts are [sic] replete with allegations that the Defendant knows are disputed yet presents to this Court as undisputed," and "key allegations [are] misrepresented as undisputed." *Id*. at 23-24.   Three of the six examples given of "misrepresented" allegations are "Town's Affidavit concerning use of force reports when in written discovery and depositions it is clear that they do not exist," "[w]hether there was adequate supervision, training, or discipline," and "whether or not Defendants Gove or deRochemont had an opportunity to intervene." *Id*. at 24.   None of these issues has anything to do with Shea, who also cannot be held responsible for an affidavit filed by another party.   It is the role of statements of material facts submitted in connection with a motion for summary judgment to demonstrate whether any material facts are actually in dispute; the fact that an opposing party denies a particular paragraph in a moving party's statement of material facts does not establish that that paragraph is a "misrepresentation."   Indeed, as is the case here, denials are often unsupported, unresponsive or found to be based on inadmissible evidence.

The plaintiff's request is without merit and is denied.

## VI.  Conclusion

For the foregoing reasons, (i) the plaintiff's request for an award of attorney fees and costs in Docket No. 41 is **DENIED**; (ii) I recommend that defendant Shea's motion to dismiss (Docket No. 29) be **GRANTED** as to any claims asserted under the Maine Constitution, Counts Three, Four, Six, Eleven, Twelve and Thirteen and all portions of Count Five other than that which alleges a denial of the plaintiff's right to liberty under the Fourteenth Amendment to the United States Constitution and otherwise **DENIED**; (iii) I recommend that defendant Shea's motion for summary judgment (Docket No. 29) be **DENIED**; and (iv) I recommend that the motion of defendants Lajoie, deRochemont, Gove and the Town of South Berwick be **GRANTED** as to Counts One through Four, Six through Fourteen

and all portions of Count Five other than that which alleges a denial of the plaintiff's right to liberty under the Fourteenth Amendment to the United States Constitution, and any claim for punitive damages, and otherwise **DENIED**.  Remaining for trial if my recommendations are adopted will be Counts One and Two against defendant Shea; Count Five as to a claim of denial of liberty under the federal constitution only, against defendants Shea, deRochemont and Gove; Count Fourteen as to defendant Shea; and a claim for punitive damages against defendant Shea.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 17th day of May, 2006.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge

45